IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTA S. SALMERON,
1467 Meridian Pl, NW
Washington, D.C. 20010

          **Plaintiff,**

v.                            Civil Case No. 14-1692

EQUIFAX INFORMATION SERVICES, LLC
  SERVE:    Corporation Service Company, Reg. Agent
                  1090 Vermont Avenue, NW
                  Washington, D.C., 20005

and

MARLOW COLLECTIONS, INC.,
10403 Hospital Drive, Suite 101
Clinton, MD 20735

and

PARAMOUNT RECOVERY SYSTEMS, L.P.,
105 Deana Street
Robinson, TX 76706

          **Defendants.**

## COMPLAINT

The Plaintiff, MARTA SALMERON, (hereinafter, "Plaintiff"), by counsel, and for her Complaint against Defendants, alleges as follows:

### PRELIMINARY STATEMENT

This is an action for actual, statutory and punitive damages, costs and attorney's fees brought against all Defendants pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act or "FCRA") and against Marlow Collections, Inc., and Paramount Recovery, Inc.

for a violation of 15 U.S.C. § 1692 *et seq.* (Federal Fair Debt Collection Practices Act or "FDCPA").

## JURISDICTION

1. The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p), 15 U.S.C. § 1692k and 28 U.S.C. §1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

3. The Plaintiff, MARTA SALMERON ("Ms. Salmeron"), is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c) and § 1692a(3).

4. Upon information and belief, EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

5. Upon information and belief, Equifax is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

6. Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

7. Upon information and belief, MARLOW COLLECTIONS, INC. ("Marlow") is a corporation organized under the laws of Maryland and whose sole purpose is the collection of consumer debts. At all times relevant hereto, Marlow was a "debt collector" as governed by the FDCPA and a "furnisher" as governed by the FCRA.

8. Upon information and belief, PARAMOUNT RECOVERY SYSTEMS, LP. ("Paramount") is a corporation organized under the laws of Texas and whose sole purpose is the collection of consumer debts. At all times relevant hereto, Paramount was a "debt collector" as governed by the FDCPA and a "furnisher" as governed by the FCRA.

## FACTS

9. On or around June 2013, Ms. Salmeron applied for a loan and discovered that Equifax was reporting inaccurate information in her credit file.

10. In particular, Ms. Salmeron's Equifax credit report was showing 6 different collection accounts—each of which were severely past due.

11. According to Ms. Salmeron's Equifax credit report, five of the six accounts were reported by a debt collection company named, "Chesapeake Receivables Management," with an address of 10 Saint Patricks Drive, Suite 5, Waldorf, Maryland 20603.

12. The remaining account was reported by Paramount.

13. This information was false. Ms. Salmeron never received any services from Chesapeake Receivables Management or Paramount Recovery Systems or the original creditor of the debts, Southern Maryland Hospital.

14. On or around June 10, 2013, Ms. Salmeron mailed dispute letters to Equifax. In this letter, Ms. Salmeron disputed (and separately identified) the 6 inaccurate accounts reported by Equifax and explained that she never received any services from Chesapeake Receivables Management, Paramount or the original creditor Southern Maryland Hospital. Ms. Salmeron further explained that the only doctor she had seen since 2001 was Luis Gonzalez, who was not affiliated whatsoever with Southern Maryland Hospital and who she had always paid.  Ms.

Salmeron provided the contact information for Dr. Gonzalez so that Equifax could contact him to verify the accuracy of the information provided by Ms. Salmeron.

15. On or around June 21, 2013, Equifax forwarded its Investigation Results to Ms. Salmeron, which indicated that Equifax verified that the accounts belonged to her. However, in its Investigation Results, Equifax indicated that Marlow—not Chesapeake Receivables Management—verified that the accounts were reporting correctly. Equifax's Investigation Results provided the same address for Marlow as it did for Chesapeake Receivables Management.

16. Upon information and belief, Marlow is the parent company and owner of Chesapeake Receivables Management and was the actual entity that furnished the credit information to Equifax.

17. On or around October 10, 2014, Ms. Salmeron sent a follow-up dispute letter to Equifax, which once again disputed the inaccurate information in her credit file. In this letter, Ms. Salmeron indicated that the accounts reported by Marlow/Chesapeake were inaccurate for the reasons explained in her previous letter, which she enclosed. Ms. Salmeron once again requested Equifax to conduct an investigation and delete the accounts because she did not receive the underlying services.

18. On or around December 31, 2013, Equifax forward its Investigation Results to Ms. Salmeron, which requested Ms. Salmeron to be "specific with your concerns by listing names, numbers, and the nature of the dispute." This response was a violation of the FCRA as Ms. Salmeron's letter was clear about which accounts she disputed and she enclosed her previous letter dated June 10, 2013, which prompted an investigation.

19. In April 2014, Ms. Salmeron mailed another dispute letter (once again expressly identifying the accounts she disputed) and explaining again that the accounts were inaccurate. In this letter, Ms. Salmeron again disputed that she ever received any medical services from the original creditor and provided the contact information for Dr. Gonzalez.

20. Equifax did not mail Investigation Results to Ms. Salmeron in response to her April 2014 dispute.

21. Upon information and belief, Equifax once again contacted Marlow and Paramount *via* an ACDV, and both Marlow and Paramount blindly verified that the accounts were reporting accurately without conducting any investigation.

22. These reportings were false. Plaintiff never received any medical services from Southern Maryland Hospital.

23. Defendants each received, but ignored the Plaintiff's disputes and refused to delete the inaccurate information regarding the account from the Plaintiff's credit file.

24. Defendants each had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the information.

25. On numerous occasions, Equifax furnished the Plaintiff's consumer reports to multiple entities which contained the inaccurate derogatory information regarding the Marlow and Paramount accounts.

*Marlow and Paramount are Debt Collectors*

26. Marlow and Paramount are debt collection companies whose practice focus exclusively on the collection of debts.

27. Marlow and Paramount regularly collect consumer debts.

28.     Marlow and Paramount regularly demand payment from consumers of claimed delinquencies and acquires delinquent consumer accounts for the sole purpose of collecting the underlying debt.

29.     Marlow and Paramount regularly tell consumers in correspondence that "this is an attempt to collect a debt and any information obtained will be used for that purpose" and/or that the communication is from a debt collector, the disclosures that the FDCPA, at 15 U.S.C. § 1692e(11), requires that debt collectors provide in all written communications (other than a formal pleading) sent "in connection with the collection of any debt" ("the § 1692e(11) disclosure").

30.     Marlow and Paramount regularly attempt to provide the verification of debts required by the FDCPA, at 15 U.S.C. § 1692g(b), upon written request from consumers.

31.     After Marlow and Paramount received notice from Equifax that the accounts did not belong to Ms. Salmeron, Marlow and Paramount continued to communicate this false information to Equifax in violation of the FDCPA.

**COUNT ONE:**
**(Violation of 15 U.S.C. § 1681e(b))**
**(*EQUIFAX*)**

32.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

33.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

34.     As a result of this alleged conduct, action, and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

35.     Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

36.     The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT TWO:
### (Violation of 15 U.S.C. § 1681i(a)(1))
### (*EQUIFAX*)

37.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

38.     Defendant violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file.

39.     As a result of this conduct, the Plaintiff suffered actual damages.

40.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

41. The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from Equifax pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT THREE:
### (Violation of 15 U.S.C. § 1681i(a)(2))
### (*EQUIFAX*)

42. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

43. Defendant violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received in Plaintiff's dispute letter.

44. As a result of this conduct, the Plaintiff suffered actual damages.

45. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

46. The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT FOUR:
### (Violation of 15 U.S.C. § 1681i(a)(4))
### (*EQUIFAX*)

47. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

48. Defendant violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiff's communications.

49. As a result of this conduct, the Plaintiff suffered actual damages.

50. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

51. The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### COUNT FIVE:
### (Violation of 15 U.S.C. § 1681i(a)(5))
### (*EQUIFAX*)

52. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

53. Defendant violated 15 U.S.C § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified.

54. As a result of this conduct, the Plaintiff suffered actual damages.

55. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

56. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT SIX:
## (Violation of 15 U.S.C. § 1681s-2(b)(1)(A))
### (*MARLOW & PARAMOUNT*)

57. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

58. On one or more occasions within the past two years, by example only and without limitation, Marlow and Paramount violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

59. When the Plaintiff mailed her disputes to the consumer reporting agencies ("CRAs"), they use a dispute system named, "e-Oscar", which has been adopted by the credit reporting agencies and by their furnisher-customers such as Marlow and Paramount. It is an automated system and the procedures used by the CRAs are systemic and uniform.

60. When Equifax receives a consumer dispute, it (usually *via* an outsource vendor) translates that dispute into an "ACDV" form.

61. Upon information and belief, the ACDV form is the method by which Marlow and Paramount have elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

62. On information and belief, the Plaintiff alleges that to date Marlow and/or Paramount have never complained to the CRAs about the amount of information they receive regarding a consumer dispute through the e-Oscar system or through ACDVs.

63. If Marlow or Paramount receive a consumer dispute ACDV form, they are aware that they may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

64. Based on the manner in which Equifax responded to the Plaintiff's disputes, representing that Marlow and Paramount had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Equifax did in fact forward the Plaintiff's dispute *via* an ACDV to Marlow and Paramount.

65. Marlow and Paramount understood the nature of the Plaintiff's dispute when they received the ACDV from the credit bureaus.

66. When Marlow and Paramount received the ACDV from the credit reporting agencies, they as well could have reviewed its own system and previous communications with the Plaintiff and discovered additional substance of the Plaintiff's dispute.

67. Notwithstanding the above, Marlow and Paramount follow a standard and systemically unlawful process when they receive the ACDV dispute. Basically, all Marlow and Paramount do is review their own internal computer screen for the account and repeat back to the ACDV system the same information that they already reported to the CRAs.

68. When Marlow and Paramount receive a consumer dispute through e-Oscar, they do not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

69. As a result of Marlow and Paramount's violations of 15 U.S.C. §1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

70. The violations by Marlow and Paramount were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

71. The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

72. Marlow and Paramount were aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

73. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Marlow and Paramount intended their employees or agents to follow.

74. On information and belief, the Plaintiff alleges that Marlow and Paramount's employees or agents did not make a mistake (in the way in which he or she followed Marlow and Paramount's procedures) when he or she received, processed and responded to the CRAs' ACDVs.

75. On information and belief, the Plaintiff alleges that Marlow and Paramount have not materially changed their FCRA investigation procedures after learning of their failures in this case.

76. In the alternative, Marlow and Paramount were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

77. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Marlow and Paramount in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT SEVEN:**
**(Violation of 15 U.S.C. § 1681s-2(b)(1)(B))**
**(*MARLOW & PARAMOUNT*)**

78. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

79. On one or more occasions within the past two years, by example only and without limitation, Marlow and Paramount violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer report agencies.

80. As Plaintiff detailed in Count Six, Marlow and Paramount have elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

81. Marlow and Paramount are aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

82. Marlow and Paramount do not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

83. Marlow and Paramount understood the Plaintiff's disputes.

84. Nevertheless, Marlow and Paramount ignored such information and instead simply regurgitated the same information it had previously reported to the CRAs.

85. As a result of Marlow and Paramount's violations of 15 U.S.C. §1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

86. The violations by Marlow and Paramount were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Marlow and Paramount were negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

87. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Marlow and Paramount in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT EIGHT:
### (Violation of 15 U.S.C. § 1681s-2(b)(1)(C) and (D))
### (*MARLOW & PARAMOUNT*)

88. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

89. On one or more occasions within the past two years, by example only and without limitation, Marlow and Paramount violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the Marlow and Paramount's representations within Plaintiff's credit files with Equifax without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

90. Specifically, Marlow and Paramount failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the CRAs.

91. On information and belief, the Plaintiff alleges that Marlow and Paramount rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

92. Furthermore, Marlow and Paramount knew that the Plaintiff disputed the subject account through both of her dispute letters to Equifax.

93. The Plaintiff's disputes were bona fide as she never received medical services or was a patient at Southern Maryland Hospital.

94. As a result of Marlow and Paramount's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

95. The violations by Marlow and Paramount were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

96. Marlow and Paramount were aware of the *Saunders v. B.B. & T* FCRA decision by the Fourth Circuit when they followed the ACDV procedures used regarding the Plaintiff's dispute.

97. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Marlow and Paramount intended its employees or agents to follow.

98. On information and belief, the Plaintiff alleges that Marlow and Paramount's employee or agent did not make a mistake (in the way in which he or she followed their procedures) when he or she received, processed and responded to the CRAs' ACDVs and did not include the XB code in the CCC field.

99. On information and belief, the Plaintiff alleges that Marlow and Paramount have not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

100. In the alternative, Marlow and Paramount were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

101. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Marlow and Paramount in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT NINE:
### (Violation of 15 U.S.C. § 1692e)
### (*MARLOW & PARAMOUNT*)

102. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

103. Marlow and Paramount violated 15 U.S.C. § 1692e, e(2), e(8), e(10) and/or e(14) by falsely indicating that the Plaintiff was obligated to pay monies on the accounts identified in its communications to Plaintiff and/or the credit bureaus.

104. As a result, Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Marlow and Paramount pursuant to 15 U.S.C. § 1692k.

### COUNT TEN:
### (Violation of 15 U.S.C. § 1692f)
### (*MARLOW & PARAMOUNT*)

105. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

106. Marlow and Paramount violated 15 U.S.C. § 1692f(1) through its attempt to collect amounts not permitted by law.

107. As a result, Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Marlow and Paramount pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,

**MARTA SALMERON**

By   /s/   *Kristi C. Kelly*
Kristi Cahoon Kelly, (DC Bar No. 974872)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7570 - Telephone
(703) 591-0167 - Facsimile
E-mail:  kkelly@kellyandcrandall.com
*Counsel for Ms. Salmeron*